## WILLIAM C. HOLT AND WIFE, APPELLANTS v. THOMAS AND EDMUND ROGERS.

422

The case was submitted to the court on printed arguments, by Mr Bibb, for the appellants ; and by Mr Tompkins, for the appellees.

424

426

428

Mr Tompkins, for the appellees.

Mr Justice Story delivered the opinion of the Court.

After stating the case, he proceeded :

This is an appeal from a decree of the circuit court of Kentucky district dismissing the bill in equity, brought by the appellants against the appellees.

Three points have been made at the argument by the appellees, either of which, if established, would be fatal to the bill in its present shape ; and two of them would be fatal in any shape. The first is, that the contract of sale was not absolute, but terminated by the non fulfilment of the conditions at the end of the stipulated period : the second is, that the lapse of time is a bar to all equity in the plaintiffs : and the third is, that the proper parties for a decree are not before the court.

In the first place then, was the contract such as it is represented to be by the appellees ? We are of opinion, that taking into view the whole transaction, its proper interpretation is such as their argument supposes. It is true, that the bond of Rogers to Dickinson, taken alone, presents only the common case of a contract for a sale of land at a specific price, with an undertaking to make a good and lawful deed of the land, when required by the vendee. But the other bond, executed contemporaneously by Dickinson to Rogers, is to be taken into consideration in ascertaining the true nature of the transaction. That bond, however inaccurate in its phraseology, shows, that the real contract between the parties was, that Rogers should make a fair and indisputable title to Dickinson of the land, on or before the 1st of January 1795 ; and if no conveyance was then made, then Rogers was to stand indebted to Dickinson in the said sum of forty-five pounds. Now, we think, that no other just interpretation can, under the circumstances, be put upon this language, than that the parties intended, that Rogers should perfect his title to the land by a patent, and should make a conveyance of an indisputable title to Dickinson, on or before the 1st of January 1795 ; and if not then made, the contract of sale was to be deemed rescinded, and the forty-five pounds, purchase money, was to be repaid to Dickinson. What strengthens this interpretation is, that the forty-five pounds was not at the time actually paid, but was merely the amount of an antecedent debt due from Rogers to Dickinson ; and the bond of the latter contains no stipulation on his part, to pay

the balance of the purchase money, except upon a conveyance made within the prescribed period. If the parties had intended the sale to be absolute, the bond of Dickinson would have contained an absolute agreement to pay that balance, as the other bond did an absolute agreement to make a conveyance, when required. We think too, that the total omission of Dickinson, in his lifetime, to take any step to enforce the sale, furnishes a strong corroboration that he so understood the matter.

But in the next place, if this difficulty could be (as we think it cannot be) surmounted, the objection from the lapse of time is equally decisive. Courts of equity are not in the habit of entertaining bills for a specific performance, after a considerable lapse of time, unless upon very special circumstances. Even where time is not of the essence of the contract, they will not interfere, where there has been long delay and laches on the part of the party seeking a specific performance. And especially will they not interfere, where there has, in the mean time, been a great change of circumstances, and new interests have intervened. In the present case, the bill is brought after a lapse of twenty-nine years. It is true, that the vendor died within the year, and that he had not, at the time of the contract, a cor lete title to the land; but a complete title was afterwards obtained by his father, who was his heir, in the year 1799 ; and Dickinson did not die until seven years afterwards. During the period of eleven years after Dickinson had a perfect right (if ever) to demand a strict performance of the contract; he never took a single step to assert his right, or to compel performance. After his death in 1806, no step was taken by his heirs or devisees, for the purpose of asserting any claim, until 1819 ; and no suit was commenced until 1823. The manner in which this delay is accounted for in the bill, is wholly unsatisfactory. The grounds stated are, the distance of the parties from each other, their intervening deaths, the difficulty of ascertaining who were the heirs, and the residence of the latter in a different state. But any reasonable diligence would have enabled Dickinson and his legal representatives to have ascertained who the heirs of Rogers were. His father and heir resided in the same state with Dickinson for many years; and the acting executor under the will of the father did not remove into Kentucky until several years after the probate of the

will. There is, therefore, no ground, upon which the gross laches or indifference of the parties can be reasonably excused. And such a long silence does, as we have already intimated, justly lead to the conclusion of a consciousness, that the right, if any, was exceedingly doubtful. In the mean time, the property has materially risen in value, from the general improvement and settlement of the country, and thus furnishes an additional reason for not disturbing the existing rights of property.

This view of the case renders it unnecessary to consider the other point, as to the non joinder of proper parties.

The bill contains no alternative prayer for a return of the forty-five pounds, if specific performance should not be decreed ; and, under the circumstances, we are of opinion, that it ought not to be decreed under this bill, upon the prayer for general relief, it not being a case specially made by the bill. The decree of the court below will, therefore, be affirmed. As the general dismissal of the bill will not, in our judgment, under the circumstances, operate as a bar to future proceedings at law, to recover the forty-five pounds, if an action be otherwise maintainable ; we do not think it necessary to dismiss the bill without prejudice, thereby throwing the burthen of the costs of the reversal upon the defendant. The plaintiff may, therefore, well be left to his legal remedy, such as it is, for any indemnification under the contract.

Decree affirmed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Kentucky, and was argued by counsel ; on consideration whereof, it is ordered, adjudged and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed with costs.