JAMES FINDLEY, ET AL., appellants, v. JORGEN KOCH, ET AL.

**Specific performance:** CONTRACT FOR THE SALE OF LAND. Where a written contract for the sale of real estate states that the persons executing the same are acting as agents for the owner who afterwards in writing accepts the contract as his own, it becomes in legal effect an agreement between the purchaser and owner.

**Specific performance:** EVIDENCE. In an action for specific performance of a contract to convey land, the evidence is reviewed upon which it is held that by plaintiffs' neglect to carry out the contract they had forfeited the right to specific performance and damages.

**Specific performance:** DELAY. Unreasonable delay in insisting on performance, and negligence in carrying out the contract, will defeat specific performance, although time is not specifically made the essence of the contract.

**Specific performance:** WHEN DENIED: EVIDENCE. Equity requires of a purchaser of land the utmost good faith on his part in attempting to carry out the contract, before specific performance will be decreed at his suit, and if his delay renders performance inequitable or unjust to the seller it will be denied. Evidence held to show such delay and inaction on the part of the purchaser as to justify a refusal of specific performance.

**Damages.** A purchaser of land who is not entitled to specific performance of the contract because of his lack of diligence in asserting his rights thereunder, is not entitled to damages for the vendor's refusal to convey, after the lapse of a reasonable time.

**Recovery of purchase money.** A recovery of earnest money by a purchaser of land who has lost his rights under the contract, cannot be had in a suit for specific performance by way of damages.

*Appeal from Clay District Court.*— HON. A. D. BAILIE, Judge.

THURSDAY, DECEMBER 15, 1904.

ACTION against defendant Koch for specific performance of contract to convey land, with the additional prayer

that if defendants be found not able to perform their contract, then that plaintiffs have damages on account of the increased value of the land after the making of the contract, and also for the loss of the rental value; and, further, that if for any reason plaintiffs are not entitled to such relief, then that they have judgment against defendants for $1,500 paid by plaintiffs on the purchase price. Defendants interposed counterclaims for damages on account of failure by plaintiffs to perform the contract. On the trial the court dismissed plaintiff's petition and defendants' counterclaim, reserving to the plaintiffs the right to bring an action at law to recover the money paid, and to defendants the right to sue on their counterclaims. From this decree both plaintiffs and defendants appeal, but plaintiffs will be treated as appellants.— *Affirmed.*

*Gilchrist, Whipple & Brown* and *G. H. Martin,* for appellants.

*F. H. Helsell* and *Buck & Kirkpatrick,* for appellees.

McCLAIN, J.— Counsel for appellees contend that the contract to convey was not made by plaintiffs with defendant Koch, but with Everett & Blow, real estate agents, who agreed to furnish abstract, conveyance, etc., and that the money was paid to this firm, and therefore no action can be maintained against Koch. But this is clearly an erroneous interpretation of the written contract, which explicitly states that Everett & Blow acted as agents for Koch, the owner of the real estate referred to in the contract. It further appears that Koch in writing accepted the contract as his own. We have, therefore, in legal effect, a written contract between plaintiffs and Koch for the conveyance of the property, and can direct our attention at once to the question whether plaintiffs are entitled to specific performance thereof, or damages for its breach.

1. CONTRACT FOR THE SALE OF LAND.

The material facts shown by the evidence are that the written contract was made and accepted by Koch in August, 1900, providing for payment of $1,000 in cash and $500 in October, and the balance of the purchase price March 1, 1901, save that the purchasers were to assume a mortgage of $12,000. The seller was to furnish certified abstract and a good warranty deed, and deliver them to the bank on or before said 1st day of March. The price was specified to be $36 per acre, and the premises were described as containing six hundred and forty acres, more or less, according to the government survey. At the end of the contract, the following provision was incorporated: " It being mutually understood that in case said section overruns in acres, said [purchasers] are to pay for same at the rate of $36.00 per acre, for what acres said J. Koch can furnish abstract showing perfect title." About March 1st, Koch submitted to the plaintiffs a certified abstract showing good title, and a deed not executed, and claimed that the plat of the county surveyor accompanying the abstract showed the tract to contain seven hundred and twenty-nine acres, for which he insisted that payment should be made at the specified price per acre. No substantial objection was made to the abstract or deed, but a controversy at once arose between the parties as to the number of acres in the tract, and plaintiffs, without tendering payment for any specific number of acres, refused to pay for the number of acres for which Koch claimed that they should pay, and asked for further survey. It appears that during the fall of 1900 Koch, who was living on the land and occupying a part of it as his homestead, sold off a large quantity of live stock and machinery which he had been keeping and using on the premises, and made arrangements to remove therefrom, and one of the plaintiffs, without any right under the contract to do so, but by permission of Koch, went upon the land and did some fall plowing. This temporary possession of plaintiffs did not, however, continue until March 1st, and,

<p style="margin-left:2em">2. SPECIFIC PER-<br>FORMANCE:<br>evidence.</p>

when it became apparent during March that plaintiffs were refusing to take the land, Koch resumed the use thereof for farming purposes, and planted crops. Before the end of March a good warranty deed, signed by Koch and his wife, was deposited in the bank, and negotiations were continued with reference to the carrying out of the contract, until September 14th, when Koch's attorneys notified the attorneys for plaintiffs, through whom negotiations had been conducted, that in their judgment plaintiffs had forfeited all their rights under the contract, and that Koch would not convey. No other action was taken by plaintiffs in the matter until this suit was brought on the 20th of August, 1902. The contention of appellees in the lower court was that, by failure and neglect on the part of plaintiffs to carry out their contract, they had forfeited the right to specific performance and to damages for failure to convey; and that, if they had any right of action for the recovery of money paid, it should be prosecuted in an action at law; and the trial court rendered a decree in accordance with these contentions.

The written contract to convey did not contain any specific provision that time should be deemed of the essence of the contract. Nevertheless, if plaintiffs unreasonably delayed insisting on performance, and were negligent in carrying out the terms of the contract on their part, they cannot now have a specific performance. It appears beyond controversy that Koch was put to considerable expense and suffered material loss by selling off his live stock and farm machinery in anticipation of the performance of the contract by plaintiffs, and in purchasing other machinery and animals for the purpose of resuming farming operations in the spring of 1901, when it appeared that the contract would not be performed within the time agreed upon. It further appears that, while the contract price was perhaps the reasonable price for the land at the time the contract was made, the market value of land

3. SPECIFIC PERFORMANCE: delay.

in the vicinity increased very materially soon after the contract was made, and, if it is now enforced, the plaintiffs will realize a large profit on account of such advance.

Without elaboration, we think the real question before us is this: Did the plaintiffs negligently fail to take such steps as they should have taken toward the carrying out of the contract until they found that the value of the land had materially increased, and then attempt to enforce specific performance merely because of this increase in value, and not on account of the continuing purpose to carry out the original contract? If so, they are not entitled to relief, for the purchaser has no right to speculate with the seller, practically abandoning the contract so far as its performance is concerned, until he finds that to insist upon performance will be of material advantage, and then, against the interests of the seller and to his prejudice, insist that the contract shall be performed. A court of equity, in the matter of specifically enforcing a contract to convey, will insist on a showing of the utmost good faith on the part of the purchaser, and require that he make it appear that he has been ready, willing, able, and even eager throughout to have the contract enforced, and will refuse relief if, on account of his negligence or unwillingness at any time to perform his part, the performance has been delayed, especially if such delay renders performance inequitable and unjust to the seller. *Giltner v. Rayl,* 93 Iowa, 16; *Gish's Executor v. Jamison,* 96 Va. 312 (31 S. E. Rep. 521); *Powell v. Berry,* 91 Va. 568 (22 S. E. Rep. 365); *Kirby v. Harrison,* 2 Ohio St. 326 (59 Am. Dec. 677); *Lewis v. Woods,* 4 How. (Miss.) 86 (34 Am. Dec. 110); *Planer v. Equitable L. Assur. Soc.,* 55 N. J. Ch. 260 (37 Atl. Rep. 668); *Willard v. Tayloe,* 8 Wall. 557 (19 L. Ed. 501).

Without going into the details of the evidence, it is sufficient to state our conclusion, which we reach after investigation of the record, that the plaintiffs practically aban-

4. SPECIFIC PERFORMANCE: when denied; evidence.

doned this contract, and for more than a year were in the situation of not desiring or expecting to perform, on their part, before they elected to institute this action. Indeed, they never offered to perform on the basis of any specific number of acres as contained in the tract, until during the trial it was stipulated that the tract actually contained six hundred and ninety acres. Koch based his claim to be paid for seven hundred and twenty-nine acres on the .certificate of the county surveyor, which, so far as we can discover, he had the right in good faith to assume to be correct. Plaintiffs, on the other hand, while insisting that this estimate was erroneous, took no steps to have the correct number of acres ascertained and offer payment on that basis. It is true that at one time the attorneys for plaintiffs in the transaction proposed that the parties mutually agree upon some arrangement for a survey, by which the expense thereof should fall on plaintiffs if Koch's claim as to the number of acres was correct, while it should fall upon Koch if the number of acres claimed by him was found to be incorrect. But we are of the opinion that something more than this was required of plaintiffs if they desired in good faith to carry out the contract. They should have ascertained for themselves what amount they were willing to pay, and exhibited some readiness and ability to make such payment if their estimate should be acceded to.

Many other questions are discussed, but what we have said, in our judgment, disposes of the substantial merits of the case. If plaintiffs are not entitled to specific perform-

5. DAMAGES.        ance because of want of equity, when they might have had the contract performed had they proceeded with diligence to assert their rights under it, they are not entitled to damages for breach of the contract; for the same reasons which can be urged against specific performance can also be urged against the action for damages where the vendor has been able and willing to perform his part of the contract, and his failure to perform has been

due to want of willingness to perform on the part of the vendee.

Counsel for appellants seem to take the position, however, that, even though they are not entitled to specific performance or damages for breach, they nevertheless are entitled in this action to recover the purchase money paid. We do not feel called upon to discuss the question whether in any event they can be entitled to have back the money paid, where the failure of vendor to carry out the contract has been due to their own fault. If there is any such right of recovery, it is subject to a counterclaim for any proximate damages resulting to defendant Koch from the breach of the contract on the part of plaintiffs. But these questions are not for determination in this action. Of course, in an action for specific performance, the plaintiff may have relief by way of damages, if, on account of any fault or wrong on the part of defendant, or any change of condition not due to the plaintiff's fault, equitable relief by way of decree for specific performance cannot be effectually afforded. But certainly a court of equity in an action for specific performance cannot render damages on account of the refusal of the defendant to return the purchase money paid. Such relief cannot be predicated on breach of contract to convey, but, if available under any circumstances, is to be secured in an action sounding in *quasi* contract. The trial court was right, therefore, in dismissing plaintiffs' bill, saving to the plaintiffs the right to sue at law by way of original action, and to defendants the right to interpose by counterclaim, or to prosecute in an original action any claim which may exist on account of plaintiff's breach of contract.— *Affirmed.*

6. RECOVERY OF EARNEST MONEY.